IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| NICK ALEXANDER WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:13-cv-05017-MDH |
| | ) | |
| AEGIS COMMUNICATIONS | ) | |
| GROUP, LLC and AEGIS USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 51). After careful consideration and for the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment (Doc. 51).

## BACKGROUND

Plaintiff's First Amended Complaint alleges fraudulent inducement and misrepresentation in employment negotiations (Count I), negligent misrepresentation (Count II), wrongful termination in violation of public policy (Count III), unjust enrichment (Count IV), breach of contract (Count V); and false imprisonment (Count VI) against his former employers Aegis Communications Group, LLC ("ACG") and Aegis USA, Inc.[1]

Aegis USA and ACG operate call centers in various locations around the United States. Plaintiff began working for ACG in approximately 2009 as a telephone sales representative at its Joplin, Missouri call center. Plaintiff took a leave of absence in June 2011 from his employment

---

[1] Aegis, USA and Aegis Communications Group, LLC merged effective as of December 31, 2013. Plaintiff was terminated from his employment in 2012.

1

with ACG to participate in a Cross-Shoring Program. The Cross-Shoring program was intended to be a mutually-beneficial opportunity for employees to obtain additional training and gain experience living, working and studying abroad, while also offering American clients access to American employees at a lower cost to clients. ACG permitted volunteer employees who were selected after an interview and ranking process to take a leave of absence from their jobs at ACG to participate in the program.

Aegis Aspire operated Aegis Global Academy ("Academy") in India and contracted with ACG to operate the Cross-Shoring Program.[2] Specifically, ACG entered a contract with Aegis Aspire to provide services under the Cross-Shoring Program. The "Master Support Agreement" was entered into on July 1, 2011 and stated the Company [ACG] requires Support in training and development of their employees and the Academy [Aegis Aspire] is willing and able to provide such Support. As set forth in the agreement, Support to be provided by Academy included, but was not limited to: "providing training and people development support to the employees of the Company on a residency programme basis, which would include without limitation, following: (1) class room training; (2) medical facilities; (3) practical training; (4) stipend; (5) mobile phone allowance; (6) administrative services; (7) transportation; (8) printing and stationary services; (9) any other auxiliary services."

Employees from Aegis Aspire prepared materials that described the Cross-Shoring Program and subsequently sent the materials to ACG management in Texas to be used to introduce the program to ACG employees. ACG management then created and distributed a basic flyer, based on materials and information provided by Aegis Aspire, to local HR managers at call centers around the United States, including Joplin, Mo. The flyer promised participants a

---

[2] Aegis Aspire is an Indian entity. It is unclear from the record provided whether Aegis Aspire has common management or ownership with Defendants.

$100 monthly allowance and that participants would receive a $2,000 savings payment at the end of the program period. The flyer also stated "Aegis will pay for your fully furnished room and board…" The flyer references "Aegis" several times but does not identify a specific Aegis entity.

The Cross–Shoring program was a one year program that took place in India. ACG provided transportation to and from India. Aegis Aspire provided the meals, lodging, internet access, pre-paid cellular phone, Indian-based health insurance and transportation in India. Aegis Aspire provided the $100 per month stipend to cover miscellaneous expenses and also provided the educational component to the participants through a contract it had with Cornell University. Participants who completed the program in good standing were informed they would receive a complimentary Indian vacation excursion from Aegis Aspire.

ACG informed participants they would receive a $2,000 pre-tax bonus at the end of the program period and would return to a position with ACG in the United States. Plaintiff's leave of absence agreement stated "provided Employee has successfully completed the one year study program and has remained in good standing throughout such one year period, Employee's return to work at Aegis and Employee's employment with Aegis will be reinstated as if he had never left employment with Aegis." If the participant did not complete the program the bonus would be retained by ACG to cover the cost of the participant's travel to and from India.[3]

Plaintiff saw a flyer posted on a cork board at the Joplin call center and applied for the program. He was initially turned down, but then later was accepted at which time he informed the company he still wanted to participate. After Plaintiff indicated his desire to participate, he

---

[3] The parties dispute a "good standing" requirement to receive the $2,000 pre-tax bonus at the end of the program period. However, it is uncontroverted that the contract stated "Instead, the bonus would be retained by ACG to cover the cost of the participant's travel to and from India." (Doc. No. 57, p. 10, # 39.).

3

had a short phone call with ACG's liaison for the program in which Plaintiff was able to ask any questions he had. He also participated in several round table discussions regarding the program in which he had the opportunity to ask questions. Plaintiff spoke with individuals from ACG and Aegis Aspire about the program before he left for India. Plaintiff went to Texas in May 2011 and was further trained for the program. Before leaving for India, Plaintiff participated in several round table discussions about the Cross-Shoring program. Plaintiff signed a leave of absence agreement with ACG on June 29, 2011

While participating in the Cross-Shoring Program, the participants were required to work in an Indian call center. Plaintiff voiced complaints to the HR manager in ACG's Joplin call center while he was in India regarding the Cross-Shoring program. Plaintiff's complaints were forwarded to ACG's Vice President of Human Resources, and ACG's liaison for the Cross-Shoring program – both of whom were in Texas. Plaintiff's complaints mainly included the issues with regard to the pay and food, but he also complained about the living conditions. The Head of Operations in Bangalore met with the participants of the Cross-Shoring Program to address complaints. Thereafter, at some point in time, Plaintiff informed his supervisors that he would not continue to work until they responded further to his complaints. Plaintiff remained in India but did not work for approximately six or seven weeks. After that time Aegis Aspire decided to terminate him from the Cross-Shoring program and sent him home.

Plaintiff was terminated from the Cross-Shoring Program in approximately May 2012. Aegis Aspire informed ACG of its decision and obtained authorization from ACG to purchase Plaintiff's return airplane ticket, since ACG was responsible for that cost. Plaintiff was given an envelope of travel paperwork by the Dean of the Academy and taken to the airport by bus. Plaintiff alleges he was missing part of his immigration paperwork and was prevented from

boarding the flight. As such, Plaintiff stayed in a nearby hotel until he was able to leave India within 48 hours. ACG terminated Plaintiff upon his return from India.

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

**A.      Negligent and Fraudulent Misrepresentation – Counts I-II.**

   1.      **Negligent Misrepresentation**.

The elements of a claim for negligent misrepresentation are : (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the

speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's justified reliance on the information, the listener suffered a pecuniary loss. *Ryann Spencer Group Inc. v. Assurance Company of America,* 275 S.W.3d 284, 288 (Mo. App. 2008).

Simply put, to maintain a claim for negligent misrepresentation, plaintiff must establish that due to a failure to exercise reasonable care, Defendant made false statements that plaintiff justifiably relied upon to his detriment. *Baum v. Helget Gas Products, Inc.,* 440 F.3d 1019, 1023 (8th Cir. 2006); citing, *Collins v. Mo. Bar Plan,* 157 S.W.3d 726, 734 (Mo. App. 2005). A negligent misrepresentation claim cannot arise solely from evidence that the defendant did not perform according to a promise or statement of future intent. *Id.*

### 2. Fraudulent misrepresentation

To state a claim for fraudulent misrepresentation, plaintiff must prove (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury. *Bohac v. Walsh,* 223 S.W.3d 858, 862-863 (Mo. App. 2007). "It is well-settled that an unkept promise does not constitute actionable fraud unless it is accompanied by a present intent not to perform." *Urologic Surgeons, Inc. v. Bullock,* 117 S.W.3d 722, 726 (Mo. App. 2003). Further, statements, representations, or predictions about an independent third party's future acts do not constitute actionable misrepresentation. *Massie v. Colvin,* 373 S.W.3d 469, 472 (Mo. App. 2012).

Both of Plaintiff's claims for misrepresentation are based on whether Defendants made materially false statements about the Cross-Shoring program upon which he relied in making his decision to participate in the program. Plaintiff claims Defendants made the following representations: (1) he would receive $100 per month to cover miscellaneous expenditures; (2) he was shown a video of an apartment and told the video was an accurate representation of the room he would stay in; (3) he was told he would receive three meals a day; (4) he was told he would work similar shifts in India to those he worked in Missouri; (5) he was told he would have $2,000 put into a savings account in his name at the end of the program; and (6) he would be promoted to supervisor upon completion of the program.

First, Defendants argue that any actions taken by Aegis Aspire, the owner and operator of the Academy, are independent of, and not subject to the control of ACG or Aegis USA and therefore Defendants cannot be held liable for any representations made regarding the Cross-Shoring program. However, based on the record before the Court, a question of fact exists regarding the independence of Aegis Aspire and/or the Academy from the Defendants. The Defendants' continued involvement with the participants in the Indian program, including their involvement with Plaintiff's complaints while he was in India, creates questions of fact with regard to their "independence" from the program. Further, the terms of the contract between ACG and Aegis Aspire, the evidence regarding the interaction between Plaintiff and individuals from both companies during his training, and the information contained in the flyer Plaintiff reviewed further present genuine issues of material fact regarding Plaintiff's claims and in particular the relationship between ACG and Aegis Aspire.

Plaintiff's First Amended Complaint alleges that "all individually described perpetrators were agents, servants, and employees of defendant ACG and were at all times acting within the

7

scope and course of their agency and employment…" Plaintiff has shown sufficient facts that a jury might be persuaded by his theory of respondeat superior and agency (whether by authorizing or ratifying the actions of Aegis Aspire or being liable for them on a theory of joint venture or other theory of agency). Therefore, Defendants' Motion for Summary Judgment on Plaintiff's negligent misrepresentation claim is denied.

Next, Defendants argue that they did not make any statements to Plaintiff that they knew were false at the time they were made. As set forth herein, in order to give rise to fraud, a promise of future performance must be accompanied by a speaker's present intent not to perform. *Look at Trotters Corp., v.Ringleader Rests.,* 929 S.W.2d 935, 940 (Mo. App. 1996); *Stevens v. Markirk Const. Inc.,* 2014 WL 211466 (Mo.App. Jan. 21, 2014). However, as set forth above, a genuine issue of material fact exists with regard to the independence of ACG and Aegis Aspire with regard to any statements made to Plaintiff. This alone creates a genuine issue of material fact to preclude summary judgment. If ACG is liable for Aegis Aspire's misstatements then knowledge by Aegis Aspire of the falsity of the representations may also be imputed to ACG.

Further, even if a jury were to find Defendants are independent of the Indian entities, and not liable for representations of the Indian entities, Plaintiff has provided enough evidence to create a question of material fact with regard to whether Defendants exercised reasonable care in making the statements about the Cross-Shoring program now alleged to be false and what information they knew about the program when promoting it. For these reasons, summary judgment on Counts I-II of Plaintiff's First Amended Complaint is denied.

## B. Wrongful Termination/Whistleblower – Count III

In this case, it is undisputed that Plaintiff was an employee at will.[4] An employer may generally terminate an at-will employee "for any reason or for no reason." *Margiotta v. Christian Hospital Northeast North-West,* 315 S.W.3d 342, 344 (Mo. 2010). However, exceptions to this doctrine exist. An employer cannot terminate an at-will employee for being a member of a protected class, such as "race, color, religion, national origin, sex, ancestry, age or disability." *Id.* In addition, Missouri recognizes the public-policy exception to the at-will doctrine. *Id.*

The public policy, also known as the wrongful discharge, doctrine is very narrowly drawn. *Id.* In a submissible whistleblower claim, the plaintiff must establish that he reported a violation of law or well-established and clearly mandated public policy to his supervisors or to legal authorities, that the employer then discharged him, and that there is a direct causal connection between the protected activity (the whistleblowing) and the discharge." *Holmes v. Kansas City Missouri Bd. of Police Com'rs ex rel.,* 364 S.W.3d 615 (Mo.App. W.D. 2012).

Further, a wrongful discharge claim must be based on a constitutional provision, a statute, a regulation based on a statute, or a rule promulgated by a governmental body. *Margiotta v. Christian Hospital Northeast North-West,* 315 S.W.3d at 346. Absent such explicit authority, the wrongful discharge fails as a matter of law. *Id.*

Plaintiff bases his claim for wrongful termination on three statutes – R.S.Mo. § 290.502 which states an "employer shall pay to each employee wages at the rate of $6.50 per hour…"; R.S.Mo. § 290.080 which states "corporations doing business in this state… shall pay wages and

---

[4] Neither party has provided any evidence that Plaintiff was not an employee at will and in Missouri the at-will employment doctrine is well-established. *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661 (Mo. 1988). Absent an employment contract an employment at will is created. *Luethans v. Washington University,* 849 S.W.2d 169 (Mo. 1995).

9

salaries of their employees as often as semimonthly, within sixteen days of the close of each payroll period…" and R.S.Mo. § 566.206 which states "a person commits the crime of trafficking for the purposes of … forced labor if a person knowingly recruits, entices, harbors, transports, provides, or obtains by any means, including but not limited to… force, deception… or threatening to cause financial harm, another person for labor services."

First, with regard to §§ 290.502 and 290.080, plaintiff claims he made multiple reports to his supervisors that he was being uncompensated for his labor. However, Plaintiff's complaints about compensation concerned the $100 stipend that was explained in the program's flyer. There is no evidence, let alone allegation, that Plaintiff complained about the minimum wage or payment under Missouri's minimum wage statutes. In addition, the Missouri statutes cited by Plaintiff in his Complaint provide specific guidelines for the payment of minimum wage in Missouri and the timing of paychecks for employees of corporations doing business in Missouri.

The Missouri Supreme Court has stated with regard to the alleged violation that the pertinent inquiry is whether the authority cited by the plaintiff clearly prohibits the conduct at issue. *Margiotta v. Christian Hospital Northeast North-West,* 315 S.W.3d at 347. Plaintiff has testified he did not believe the Missouri minimum wage laws applied to his work in India. While this alone is not dispositive, coupled with the fact that the statutes did not in fact apply to Plaintiff's work in India, that Plaintiff knew he was going to India for training and was to only be given a monthly stipend and no other wages, there is no evidence of Defendants actual violations of the Missouri statutes. The Court holds Plaintiff's wrongful termination claims based on §§ 290.502 and 290.080 fail as a matter of law and grants Defendants' summary judgment on these two claims.

The third statute cited by Plaintiff is a criminal statute, § 566.206, which states:

> A person commits the crime of trafficking for the purposes of slavery, involuntary servitude, peonage, or forced labor if a person knowingly recruits, *entices*, harbors, transports, provides, or obtains by any means, including but not limited to *through the use of* force, abduction, coercion, fraud, *deception*, blackmail, or causing or threatening to cause financial harm, another person for labor or services, *for the purposes* of slavery, involuntary servitude, peonage, or *forced labor*, or benefits, financially *or by receiving anything of value*, from participation in such activities. (*emphasis added*)

Plaintiff argues the Defendants were "dishonest" in their recruiting efforts which "forced" Plaintiff to work in India. In essence Plaintiff argues he was enticed by deception and fraud into labor in an Indian call center and that ACG stood to financially benefit. While Defendants dispute that Plaintiff made any complaints regarding this alleged violation, Plaintiff has provided enough evidence to create a material question of fact with regard to this claim. Plaintiff has alleged he was misled about the purpose of the trip to India, was deprived of food and clean water, and was given inadequate housing. Plaintiff claims he made complaints about these, and other issues, to his supervisors in India and to ACG supervisors back in the United States. There is evidence Defendants were aware of Plaintiff's complaints at the time of his termination and for these reasons, Plaintiff has provided enough evidence to create a genuine issue of material fact for the jury. The Court denies summary judgment on Plaintiff's claim for wrongful discharge based on reporting violations of R.S.Mo. § 566.206.

### C. Unjust Enrichment - Count IV

"An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which the retention of the benefit, without paying its reasonable value, would be unjust." *S & J, Inc. v. McLoud & Co. LLC.,* 108 S.W.3d 765, 768 (Mo.App. 2003). A claim for unjust enrichment has three elements: (1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be

inequitable. *Hertz Corp. v. RAKS Hospitality, Inc.,* 196 S.W.3d 536, 543 (Mo.App. 2006). Demonstrating unjust retention of the benefit is the most significant element of unjust enrichment and also the most difficult to establish. *Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.,* 280 S.W.3d 678, 697 (Mo.App. W.D.2009). "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Id.*

Plaintiff claims Defendants were enriched by his labor provided in the Cross-Shoring program in India. Specifically, Plaintiff argues Defendants received a benefit at Plaintiff's expense of at least $19.25 per hour. The essence of unjust enrichment is that the defendant has received a benefit that it would be inequitable for him to retain. *Pitman v. City of Columbia,* 309 S.W.3d 395, 403 (Mo.App. W.D.2010). Here, it is unclear where this amount of alleged benefit is derived from. Plaintiff participated in a Cross-Shoring program in which the terms included receiving a $100 stipend, housing, meals, training courses through Cornell University, in exchange for his work at the call center in India. There is no evidence that Defendants were unjustly enriched by this arrangement. Plaintiff may ultimately demonstrate Defendants got the better end of the bargain but that falls short of proving unjust enrichment. Defendant's summary judgment motion with regard to Count IV is sustained.

### D. Count V – Breach of Contract

Plaintiff concedes in his response that his breach of contract claim fails as a matter of law. (Doc. 57 p. 47). Plaintiff states that "the statute of frauds renders the alleged contract nonexistent." Therefore, based on Plaintiff's concession, the Court grants summary judgment on the breach of contract claim contained in Count V of Plaintiff's complaint in favor of Defendant.

### E. Count VI – False Imprisonment

The elements of false imprisonment are the detention or restraint of an individual against his will, coupled with the unlawfulness of the detention. *Hyatt v. Trans World Airlines, Inc.,* 943 S.W.2d 292, 299 (Mo. App. 1997). It is essential to establish a claim for false imprisonment that plaintiff show the restraint imposed on him was "total and not merely an obstruction of his right to go where he pleased." *Id.* Plaintiff's claim of false imprisonment is based on the allegation that Defendants' "agents" did not give him all the necessary paperwork for leaving India. Plaintiff claims that he was not able to fly home upon his initial arrival at the airport because he did not have his paperwork. However, Plaintiff admits he was able to leave the airport at any time, actually went to a hotel and then flew home within 48 hours. Therefore, Plaintiff cannot show the alleged "restraint" was complete. Plaintiff was free to exit the airport and free to leave India once the paperwork was resolved. Plaintiff has provided no evidence of false imprisonment and Defendants' Motion for Summary Judgment on Count VI is granted.[5]

### CONCLUSION

Wherefore, Defendants Motion for Summary Judgment (Doc. No. 51) is **GRANTED** in part and **DENIED** in part, as described herein.

**IT IS SO ORDERED.**

DATED: July 24, 2014

       /s/ Douglas Harpool
       **DOUGLAS HARPOOL**
       **UNITED STATES DISTRICT JUDGE**

---

[5] Defendants also argue that Missouri law should not apply to the alleged false imprisonment as it occurred in India. The Court has not addressed that issue since it has held Plaintiff has no cause of action for that claim.